IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CUMMINGS, | : | Civ. No. 1:22-CV-1119 |
| | : | |
| Plaintiff, | : | (Judge Mannion) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| A. WELLER, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Factual Background

This *pro se* prisoner civil rights lawsuit was filed by Williams Cummings in the Court of Common Pleas of Schuylkill County on May 14, 2022. (Doc. 1-1). Following service of the complaint, the case was removed to federal court by the defendants. (Doc. 1). What then ensued was litigation of various defense motions to dismiss, and the filing of an amended complaint by Cummings, which is now the operative pleading in this case. (Doc. 16).

The defendants initially sought to dismiss this amended complaint based upon a single narrow and specific claim, asserting that the complaint is so vague and incomprehensible that it violates Rule 8's injunction that: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). (Doc. 17). This motion

1

was then denied without prejudice to renewal in a more focused and claim-specific fashion. (Docs. 38, 39).

The defendants have renewed this motion in a much more focused way, and we are now compelled to carefully examine Cummings' allegations to determine the extent to which he has stated plausible claims for relief. Cummings' amended complaint is a fourteen page, forty-five paragraph pleading which appears to name some nineteen correctional defendants. (Id.) Some aspects of the complaint demand a great deal of the reader. (Id.) Moreover, upon reflection and careful review it is evident that on numerous occasions Cummings combines and conflates multiple events, involving different actors and disparate conduct into a single overarching claim. Further, these claims are set forth in a sweeping fashion, with many of the allegations falling beyond the applicable two-year statute of limitations. (Id.)

For example, Cummings' amended complaint seems to challenge a host of disciplinary citations on First, Fifth, and Fourteenth Amendment grounds, but the amended complaint combines dozens of prison infractions spanning many years into a single claim without providing well-pleaded facts in support of these individual claims. (Id., ¶¶ 6-10, 38). In other instances, Cummings makes allegations but fails to provide any date or time when these events are alleged to have occurred, a style of pleading that defeats any ability to respond to his claims or alleges that particular events took place far beyond the two-years limitations period prescribed by law. (Id.,

¶¶ 18-21, 28). Additionally, Cummings brings an array of claims in the nature of conditions of confinement claims, which are asserted in a hopelessly conflated fashion combining numerous alleged events, many of which appear to be time-barred without any well-pleaded factual specificity. (Id., ¶¶ 27, 33, 37).

Cummings then brings a series of specific claims relating to alleged verbal abuse of the plaintiff by correctional staff; (Id., ¶¶ 16, 26, 29, 40), isolated episodes in which Cummings complains that he received cold meals; (Id., ¶¶ 15, 17, 25, 29, 31, 32), as well as a series of claims in which Cummings asserts that he suffered ill effects from incidental exposure to a chemical agent, OC spray, that was deployed against other inmates. (Id., ¶¶ 14, 41-44). Finally, Cummings' amended complaint invites the court to order prison officials to adjust his cable television bill and provide more typewriters or word processors to inmates. (Id., ¶¶ 34, 36).

With Cummings' amended complaint framed in this fashion, the defendants have filed a more specific and focused motion to dismiss. (Doc. 40). This motion is briefed by the parties, (Docs. 49, 51) and is, therefore, ripe for resolution. For the reasons set forth below, it is recommended that the motion to dismiss be granted.

## II.   **Discussion**

### A.   **Motion to Dismiss - Standard of Review**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal

Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.---, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not

alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when dismissing a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by the mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather in conducting a view of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead
> to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should
> identify allegations that, "because they are no more than conclusions,
> are not entitled to the assumption of truth." (Id., at 1950.) Finally,
> "where there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they plausibly give
> rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129

S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover,

"documents whose contents are alleged in the complaint and whose authenticity no

party questions, but which are not physically attached to the pleading, may be

considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.

2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002)

(holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, when presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.2003); Youse v. Carlucci, 867 F.Supp. 317, 318 (E.D.Pa.1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

Two other considerations apply when assessing this amended complaint, which combines and conflates claims and parties in a fashion which is always challenging and occasionally unintelligible. At the outset, we must consider whether specific allegations in the complaint meet the pleading standards prescribed by Rule 8 of the Federal Rules of Civil Procedure, which provides that: "A pleading that

states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Rule 8 plays an important role in litigation, setting minimal pleading thresholds which must be met in order to initially state a claim. Therefore, dismissal of a complaint pursuant to Rule 8 is appropriate when a complaint is "illegible or incomprehensible," Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007), or when a complaint "is not only of an unwieldy length, but it is also largely unintelligible." Stephanatos v. Cohen,  236 F. App'x 785, 787 (3d Cir. 2007).  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir.2005). Thus, in order to obtain dismissal of a complaint under Rule 8 it must be shown that the pleading is so vague that it leaves "the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, 441 F.App'x 109 (3d Cir. 2011). Similarly, dismissal may be appropriate in " 'those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.' Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir.1995) (quotations omitted)." Tillio, 441 F. App'x at 110.

Finally, when a *pro se* complaint attempt to conflate into a single lawsuit distinct

acts committed by disparate parties at different times and places, we are reminded

that:

> Where there is no single, coherent legal, logical, topical, or temporal
> connection between these various claims, the joinder of these divergent
> claims in a single lawsuit is inappropriate under Rule 20 of the Federal
> Rules of Civil Procedure, the rule governing joinder of defendants in
> federal litigation. Rule 20 provides, in part, that:
>
>> Person[s] ... may be joined in one action as defendants if:
>>
>> (A) any right to relief is asserted against them jointly,
>> severally, or in the alternative with respect to or arising
>> out of the same transaction, occurrence, or series of
>> transactions or occurrences; and
>>
>> (B) any question of law or fact common to all defendants
>> will arise in the action.
>
> Fed. R. Civ. P., Rule 20(a)(2).
>
> In such instances, "given the hodgepodge of claims raised in the ...
> complaint," <u>Boretsky v. Governor of New Jersey</u>, 433 F. App'x 73, 77
> (3d Cir. 2011), the Court may properly, in the exercise of its discretion,
> require each plaintiff to file separate complaints relating to what seem
> to be factually distinct claims. <u>See</u> <u>Johnson v. Holt</u>, No. 1:13-CV-1866,
> 2015 WL 672127, at *22–23 (M.D. Pa. Feb. 17, 2015); <u>Johnson v.
> Chambers</u>, No. 1:11 CV 831, 2012 WL 398335, at *16 (M.D. Pa. Jan.
> 20, 2012) <u>report and recommendation adopted</u>, No. 1:11 CV 831, 2012
> WL 398309 (M.D. Pa. Feb. 7, 2012) <u>aff'd</u>, 487 F. App'x 693 (3d Cir.
> 2012).

!

<u>McClain v. Pennsylvania Dep't of Corr.</u>, No. 1:19-CV-1951, 2022 WL 3656399, at

*4 (M.D. Pa. June 14, 2022), <u>report and recommendation adopted</u>, No. 1:19-CV-

1951, 2022 WL 3647263 (M.D. Pa. Aug. 24, 2022).

Judged by these legal guideposts we turn to a consideration of Cummings'
amended complaint.

## B. **Many of the Plaintiff's Claims Fail as a Matter of Law.**

In this case, a dispassionate and focused review of Cummings' amended
complaint reveals that many of the allegations set forth in this pleading encounter
insurmountable legal obstacles. Therefore, as discussed below, these specific claims
fail as a matter of law and should be dismissed.

### 1. **Many Claims Are Time Barred**

At the outset, Cummings persists in following a course which he has been
previously informed is fruitless by asserting claims which fall far beyond the
applicable statute of limitations. Cummings is well aware of the applicable
limitations period since we have previously explained to him in clear and precise
terms that:

> It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are
> subject to the state statute of limitations for personal injury actions.
> Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the
> statute of limitations for a personal injury action is two years. 42 Pa.
> Cons. Stat. § 5524. A cause of action accrues for statute of limitations
> purposes when the plaintiff knows or has reason to know of the injury
> that constitutes the basis of the cause of action. Sameric Corp. of
> Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.
> 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir.
> 1995).
>
> While this two-year limitations period may be extended based upon a
> continuing wrong theory, a plaintiff must make an exacting showing to
> avail himself of this grounds for tolling the statute of limitations. For

example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead,

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir. 1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

Cummings v. Kramer, No. 1:22-CV-1118, 2022 WL 4594494, at \*4–5 (M.D. Pa. Sept. 7, 2022), report and recommendation adopted, No. CV 1:22-1118, 2022 WL 4585535 (M.D. Pa. Sept. 29, 2022).

Despite this clear admonition, in the instant case, Cummings endeavors to bring claims which on their face fall entirely outside the two-year limitations period prescribed by law. (Doc. 16, ¶¶ 18-21, 28). Yet, the recitals in his complaint make it clear that, for Cummings, these matters all had the degree of permanence which would have immediately put him on notice of the need to assert his rights. Therefore, on the face of the complaint, all allegations that pre-date May 2020 are barred by the applicable two-year statute of limitations and should be dismissed.

While Cummings seeks to avoid the bar of the statute of limitations by suggesting that prison officials systematically denied him access to the courts for years, immutable evidence in the form of court records belies this assertion. These court records reveal that Cummings previously actively litigated another case in this court at the time when he contends that prison officials were preventing him from communicating with the court. Cummings v. Konyski, et al., Civil No. 3:15-CV-2245. Since court records conclusively demonstrate that Cummings' claims are fictitious, those allegations cannot be relied upon to defeat the application of the statute of limitations in this case.

### 2.  **Many of Cummings' Conflated Claims Violate Rules 8, 12 and 20 as well as the Statute of Limitations.**

In addition, Cummings' amended complaint advances numerous claims which are flawed in multiple respects since they combine and conflate dozens of incidents, frequently spanning many years beyond the statute of limitations into a single claim without providing well-pleaded facts in support of these individual claims. (Doc. 16, ¶¶ 6-10, 27, 33, 37, 38).

These conflated and cryptic claims which fall in part beyond the statute of limitations are flawed in at least four ways. First, these claims violate Rule 12(b)(6), since they are devoid of well-pleaded facts giving rise to a plausible claim for relief. Since "[t]hreadbare recitals of the elements of a cause of action, supported by the mere conclusory statements, do not suffice," to state a claim under Rule 12(b)(6), Ashcroft v. Iqbal, 556 U.S. at 678, this "formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. Therefore, Rule 12 compels the dismissal of these claims.

Second, in some specific instances these allegations, which are unmoored in time, are so vague that they leave "the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack, 438 F. App'x at 158. Thus, these allegations also violate Rule 8 and should be dismissed.

Further, there is an overarching theme to these allegations. They consistently conflate distinct acts committed by disparate parties at different times and places. As

such, they present the type of "hodgepodge" of claims which is subject to dismissal under Rule 20. <u>Boretsky,</u> 433 F. App'x at 77.

Finally, on the face of the complaint, these conflated allegations reach far beyond the two-year limitations period set by law. Therefore, the statute of limitations bars pursuit of those dated aspects of the hopelessly conflated allegations.

### 3. <u>Cummings May Not Pursue Claims Based Solely Upon Alleged Verbal Harassment.</u>

In his amended complaint, Cummings also alleges that in some instances he was verbally harassed by staff, conduct which he suggests constituted cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 16, ¶¶ 16, 26, 29, 40). We are constrained to observe that Cummings is well aware that these allegations do not state a claim upon which relief may be granted since we have previously informed him that:

> The plaintiff may not premise a constitutional claim on alleged verbal harassment, as he apparently attempts to do at times in this amended complaint. These verbal harassment allegations fail because "[i]t is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment." <u>Robinson v. Taylor</u>, 204 F. App'x 155, 156 (3d Cir. 2006) (citing <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001)); <u>DeWalt v. Carter</u>, 224 F.3d 607, 612 (7th Cir. 2000); <u>Boddie v. Schnieder</u>, 105 F.3d 857, 861 (2d Cir. 1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious' "). <u>See, e.g.</u>, <u>Rister v. Lamas</u>, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); <u>Patterson v. Bradford</u>, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011); <u>Williams v. Bradford</u>, CIV. 10-5120 JBS, 2011 WL 1871437

(D.N.J. May 13, 2011); <u>Ringgold v. Lamby</u>, 565 F. Supp. 2d 549, 553
(D. Del. 2008); <u>Sharpe v. Costello</u>, 1:06 CV 1493, 2007 WL 1098964
(M.D. Pa. Apr. 11, 2007).

Thus, to the extent that the plaintiff simply alleges that he was verbally
harassed by staff, such conduct, "although deplorable, does not violate
the Eighth Amendment." <u>Robinson</u>, 204 F. App'x at 156. Accordingly,
these verbal harassment allegations fail to state a constitutional claim
and should be dismissed. <u>Mimms v. U.N.I.C.O.R.</u>, 386 F. App'x 32, 35
(3d Cir. 2010) (verbal harassment of a prisoner, without more, does not
violate the Eighth Amendment); <u>Lindsey v. O'Connor</u>, 327 F. App'x
319, 321 (3d Cir. 2009) (verbal harassment of a prisoner, although
distasteful, does not violate the Eighth Amendment).

<u>Cummings v. Weller</u>, No. 1:22-CV-1119, 2022 WL 4594574, at *4 (M.D. Pa. Sept.

6, 2022), <u>report and recommendation adopted,</u> No. CV 1:22-1119, 2022 WL

4585534 (M.D. Pa. Sept. 29, 2022). Therefore, these claims also fail and should be

dismissed.

### 4.  <u>Cummings' Allegation that He Occasionally Received Cold Meals Does Not State an Eighth Amendment Claim.</u>

Cummings' amended complaint also identifies a number of specific instances

over the span of many years in which he complains that he was served food which

was cold. (Doc. 16, ¶¶ 15, 17, 25, 29, 31, 32). Cummings contends that these meal

service issues rose to the level of a violation of the Eighth Amendment.

We disagree. In our view these isolated meal service complaints do not state

a viable constitutional claim. On this score, the governing legal benchmarks are

familiar ones. As we have noted:

"When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health." <u>Fuentes v. Wagner</u>, 206 F.3d 335, 345 (3d Cir. 2000) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). Thus, "[t]he objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' " <u>Fuentes</u>, 206 F.3d at 345 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

<u>Atkinson v. Taylor</u>, 316 F.3d 257, 272 (3d Cir. 2003).

Thus, these claims require proof of both a culpable state of mind, and objective proof of physical conditions of confinement that shock the conscious and depart from minimal civilized standards of life's necessities. In short, conditions of confinement claims like those made here are judged against precise and exacting legal standards. As the United States Supreme Court has observed:

> The Constitution "does not mandate comfortable prisons," <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," <u>Helling</u>, 509 U.S., at 31, 113 S.Ct., at 2480. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. <u>See Hudson v. McMillian</u>, 503 U.S. 1,

17

112 S.Ct. 995, 117 L.Ed.2d 156 (1992). *The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food*, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984).

Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L.Ed. 2d 811 (1994) (emphasis added).

By specifically identifying a constitutional obligation to provide adequate food to inmates, the courts have acknowledged that the denial of food to prisoners can, on occasion, rise to the level of an Eighth Amendment violation. Yet, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, see Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980), there is no constitutional right to hot meals." Laufgas v. Speziale, 263 Fed.Appx. 192, 198 (3d Cir. 2008) (citing Brown-El v. Delo, 969 F.2d 644, 648 (8th Cir. 1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)). Similarly, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation." Lindsey v. O'Connor, 327 Fed.Appx. 319, 321 (3d Cir. 2009) (citing Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (finding that only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)). Instead, only "[a] systematic failure to provide food in sufficient quantity to maintain normal health violates the Eighth Amendment." Feliciano v. Burset, CIV. 79-4 PG, 2010 WL 4922700 (D.P.R. Dec. 2, 2010).

Rosa-Diaz v. Harry, No. 1:17-CV-2215, 2017 WL 6806795, at *6–7 (M.D. Pa. Dec. 6, 2017), report and recommendation adopted in part, No. 1:17-CV-2215, 2018 WL 294494 (M.D. Pa. Jan. 4, 2018). Recognizing that "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, there is no constitutional right to hot meals," Laufgas, 263 F. App'x at 198, Cummings' complaints that on

some isolated occasions his meals were served cold simply does not state a constitutional infraction.

     **5.**   **Prison Officials Are Entitled to Qualified Immunity on Cummings' Claims that They Violated His Clearly Established Rights When They Used OC Spray to Subdue Other Prisoners.**

Cummings advanced one other novel Eighth Amendment claim in his complaint. Specifically, he alleges that on occasion prison staff were required to use a chemical agent, OC spray, to quell disturbances by other inmates in other cells. Even though Cummings does not assert that this chemical agent was deployed against him, he seems to aver that the potential, incidental effects of these chemical agents were such that his Eighth Amendment rights were infringed. (Doc. 16, ¶¶ 14, 41-44).

Once again, we disagree. Several overarching and animating constitutional considerations govern analysis of any Eighth Amendment claim. As the Court of Appeals has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of

confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S. Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344–45 (3d Cir. 2000).

Thus, while prison officials may violate an inmate's rights under the Eighth Amendment to the United States Constitution by displaying deliberate indifference to a substantial risk of serious harm to an inmate, an inmate asserting a failure to protect claim must make a precise showing to prove that claim. To sustain such a claim an inmate must:

[M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

Thus, the Eighth Amendment deliberate indifference standard, at a minimum, calls for knowledge of some substantial risk to the health and safety of inmates, and a failure to act in the face of that known danger. There is a necessary corollary to this deliberate indifference standard. Specifically, it is clear that the concept of "deliberate indifference entails something more than mere negligence." Farmer, 511 U.S. at 835, 114 S.Ct. 1970. Therefore, a mere accident or inadvertence on the part of corrections officials does not violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976). Even where a plaintiff has presented sufficient evidence to allow a factfinder to reach the inference that a prison official had knowledge of the risk on the basis that risk was obvious, it is clear that an inference may not be compelled, and that the prison official must be permitted to show that he was actually unaware of the risk in question. Beers–Capitol, 256 F.3d at 132. Lastly, a prison official who is shown to have been actually aware of a risk to a prisoner-plaintiff can avoid liability if he shows that he responded reasonably to the risk, even if the response did not avoid the ultimate harm. Id.

Finally, when considering an Eighth Amendment claim premised on the use of OC spray by prison staff, it is clear that

> "[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984); see also Thomas v. Bryant, 614 F.3d 1288, 1311 (11th Cir. 2010) (noting that it is a violation of the Eighth Amendment "where chemical agents are used

> unnecessarily, without penological justification, or for the very purpose of punishment or harm"); Thomas v. Comstock, 222 F. App'x 439, 442 (5th Cir. 2007) (noting that the use of chemical agents can violate the Eighth Amendment when done so as a "malicious or sadistic application of force"); Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) (citing Soto for the same conclusion); cf. Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000) (noting that "a limited application of [pepper spray] ... constitutes a 'tempered response by prison officials' when compared to other forms of force").

Roberts v. Luther, No. 1:21-CV-00958, 2021 WL 5233318, at *7 (M.D. Pa. Nov. 10, 2021).

In the instant case, Cummings has alleged that the defendants failed to protect him from a serious risk of harm when they used an excessive amount of OC spray on other inmates. However, Cummings, has not shown that the OC spray was used in a greater quantity than necessary on these other inmates who were noncompliant with staff orders. Nor has he shown that the use of OC spray on other inmates housed in different cells posed a serious risk of harm to him, and that the defendants were subjectively aware of such a risk. Accordingly, this Eighth Amendment claim, whether couched in terms of excessive force or deliberate indifference, fails as a matter of law. See Gibson v. Flemming, 837 F. App'x 860, 862 (3d Cir. 2020) (single unplanned use of OC spray did not violate the Eighth Amendment).

However, even if Cummings could state a colorable Eighth Amendment claim on these facts, we believe that the correctional defendants would be entitled to qualified immunity. The doctrine of qualified immunity protects government

22

officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). The official seeking qualified immunity

has the burden of establishing their entitlement to the affirmative defense. <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 288 (3d Cir. 2014) (citing <u>Reedy v. Evanson</u>, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), overruled in part by <u>Pearson</u>, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." <u>Mullenix</u>, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u> (quoting <u>Ashcroft v. Al-Kidd</u>, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." <u>Id.</u> (quoting <u>Al-Kidd</u>, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." <u>Id.</u> (quoting <u>Al-Kidd</u>, 563 U.S. at 742). On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202. It is the plaintiff who bears the initial

burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. See Davis v. Scherer, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right because they do not constitute binding authority. El v. City of Pittsburgh, 975 F.3d 327, 340 (3d Cir. 2020). In rare cases, the unlawfulness of a government official's conduct may be established from the obviously unlawful nature of the defendant's conduct "even though existing precedent does not address similar circumstances." Wesby, 138 S. Ct. at 590 (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

In the instant case, we cannot conclude that it was clearly established that inadvertent exposure to OC spray used against another inmate would violate an individual's Eighth Amendment rights. Indeed, several courts in this district have granted qualified immunity in this setting. See e.g., Rivera v. Redfern, 2023 WL 2139827, at *9 (M.D. Pa. Feb. 21, 2023) (Schwab, M.J.) (collecting cases and granting qualified immunity because "it is not clearly established that secondhand exposure to OC spray in response to another inmate's actions across the block, would violate an individual's rights") (internal quotations and citations omitted); Stroman v. Wetzel, 2020 WL 1531325, at *6 (M.D. Pa. Mar. 31, 2020) (Conner, J) ("Defendants simply could not have recognized that their use of OC spray in response to another inmate's actions across the block would violate a 'clearly established statutory or constitutional right[ ] of which a reasonable person would have known'") (citations omitted); but see Roberts, 2021 WL 5233318, at *7 (M.D. Pa. Nov. 10, 2021) (Kane, J) (declining to grant qualified immunity where correctional staff sprayed OC spray within close proximity to the plaintiff's cell and directly into the RHU's ventilation system).

Given that Cummings has failed to show that the defendants violated a clearly established right in this setting, the defendants are entitled to qualified immunity on these Eighth Amendment claims.

### 6. **Cummings' Complaints Regarding Cable TV Service and Typewriters Fail as a Matter of Law.**

Finally, Cummings' amended complaint invites the court to order prison officials to adjust his cable television bill and provide more typewriters or word processors to inmates. (Doc. 16 ¶¶ 34, 36).  These claims merit only brief attention. Simply put, inmate complaints regarding cable TV service in prison simply do not rise to the level of a constitutional concern since "consistent with settled case law, [an inmate] has no constitutional right to watch cable TV in his cell." Clinton v. Camp Hill Prison, No. 1:11-CV-2200, 2012 WL 315279, at *5 (M.D. Pa. Jan. 11, 2012), report and recommendation adopted, No. 1:11-CV-2200, 2012 WL 315098 (M.D. Pa. Feb. 1, 2012). Nor do complaints about limited access to prison typewriters raise matters of constitutional dimension. Brown v. Kerr, No. CIV.A. 08-6385 (JBS), 2009 WL 1969155, at *5 (D.N.J. July 1, 2009). Therefore, these claims should also be dismissed.

### 7. **The Defendants Are Not Individually Liable for an ADA Claim.**

Cummings' complaint against these individual defendants also alludes to the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, *et seq*. However, to the extent that the plaintiff seeks to hold the defendants individually liable for an alleged violation of Title II of the ADA, this claim is also unavailing. This individual liability claim fails for a single simple reason. It is well-settled that: "Individuals are not

liable under Title II [of the ADA]." <u>Snider v. Pennsylvania DOC</u>, 505 F. Supp. 3d 360, 405–06 (M.D. Pa. 2020). Therefore, any ADA individual liability claims should also be dismissed.

### 8.  <u>Cummings' Remaining Claims are Unexhausted.</u>

Once the time-barred and legally meritless claims set forth in Cumming's amended complaint are dismissed, what remains are a handful of allegations. However, as to these few remaining allegations the defendants have shown, without contradiction by Cummings, that the plaintiff has failed to exhaust his administrative remedies prior to proceeding to federal court.

This is a fatal shortcoming. Cummings' failure to timely and fully pursue these administrative remedies has substantive significance for him since the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide range of inmate complaints, including damages complaints like those made here. <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004); <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated

by a fundamental recognition that section 1997e's exhaustion requirement promotes

important public policies. As the United States Court of Appeals for the Third Circuit

has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). . . . [A] comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000) (citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to section 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to section 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006). Furthermore, applying this procedural default component to the exhaustion requirement, Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), it has been held that:

> As for the failure to [] identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," . . . in the absence of any justifiable excuse, a[n] inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA.

Williams v. Pennsylvania Dep't of Corrections, 146 F. App'x 554, 557 (3d Cir. 2005). Thus, "it is clear, regardless of the purpose of the requirement, that Spruill requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." Hemingway v. Ellers, Civ. No. 07-1764, 2008 WL 3540526, *11 (M.D. Pa. Aug. 12, 2008).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra; see also Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where

Office of Professional Responsibility fully examined merits of excessive force claim
and uncontradicted correctional officers impeded filing of grievance).

However, in the absence of competent proof that an inmate was misled by
corrections officials, or some other extraordinary circumstances, inmate requests to
excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate
cannot excuse a failure to timely comply with these grievance procedures by simply
claiming that his efforts constituted "substantial compliance" with this statutory
exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).
Nor can an inmate avoid this exhaustion requirement by merely alleging that the
Department of Corrections policies were not clearly explained to him. Davis v.
Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Furthermore, an inmate's confusion
regarding these grievance procedures does not, standing alone, excuse a failure to
exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate
cannot cite to alleged staff impediments to grieving a matter as grounds for excusing
a failure to exhaust if it also appears that the prisoner did not pursue a proper
grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x
731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased
efforts to impede grievance, prisoner failed to follow through on grievance). In this
setting, the PLRA requires that an inmate fully exhaust his administrative remedies
before proceeding into federal court, an administrative exhaustion requirement

which entails full compliance with grievance procedures and timelines, as well as the basic requisite that the inmate identify those against whom he has a grievance during the administrative process before he may name these individuals as defendants in a federal lawsuit.

Finally, and significantly for purposes of the instant case, the "PLRA[ ] provides: '[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.' 42 U.S.C. § 1997e(a) (2006)." Nelson v. Warden of C.F.C.F., 461 F. Supp. 2d 316, 318 (E.D. Pa. 2006) (emphasis added). By plainly stating that an action may not be brought until after exhaustion is completed, Congress clearly evinced an intent that all administrative exhaustion be completed prior to the filing of a complaint. In this regard, it is also well-settled that the

> United States Supreme Court and the Third Circuit repeatedly have held that this provision means what it says. See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Spruill v. Gillis, 372 F.3d 218, 227, 230 (3d Cir. 2004) (holding in addition that § 1997e(a)'s exhaustion requirement includes a procedural default component); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (holding in addition that there is no futility exception to § 1997e(a)'s exhaustion requirement).

Nelson, 461 F. Supp. 2d at 318.

Thus, the PLRA simply "does not encompass a second-step appeal . . . months late nor the filing of a suit before administrative exhaustion, however late, has been completed." Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002) (citing Perez v. Wis. Dep't of Corr., 182 F.3d 532, 534-35 (7th Cir. 1999) (observing "Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit")); Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) (holding that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing her complaint in federal court), accord Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998); Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir. 1997).

In short, under the PLRA, full and proper exhaustion of administrative remedies is a prerequisite to filing a lawsuit and "in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." Payne v. Wetzel, No. 3:12-CV-1932, 2017 WL 3446535, at *7 (M.D. Pa. May 15, 2017), report and recommendation adopted, No. 3:12-CV-1932, 2017 WL 3443216 (M.D. Pa. Aug. 10, 2017) (quoting Williams v. Pennsylvania Dep't. of Corrections, 146 Fed. Appx. 554, 557(3d Cir. 2005)).

In this case, the uncontested grievance records reveal that Cummings is a prolific, but erratic, grievant. Indeed, between 2018 and 2022, Cummings has filed some 242 grievances but only fully exhausted 10 of these grievances. (Doc. 49-1). Of these ten grievances seven appear to have involved matters which fell outside the statute of limitations, and the remaining three grievances cannot be linked in an intelligible way to Cummings remaining, surviving substantive allegations. Therefore, we find that Cummings has not fully and properly exhausted these last remaining claims, and those claims should be dismissed.

Finally, it is recommended that the complaint be dismissed without further leave to amend. As a *pro se* litigant Cummings has a penchant for filing proposed amended complaints which are flawed in ways that have previously been identified for the plaintiff by the court. Cummings v. Kramer, No. 1:22-CV-1118, 2022 WL 19827475, at *1 (M.D. Pa. Nov. 3, 2022), report and recommendation adopted, No. CV 1:22-1118, 2023 WL 2772128 (M.D. Pa. Apr. 4, 2023). In this setting, it is also clear that leave to further amend a complaint may "be denied if the court finds 'undue delay, bad faith or dilatory motive on the part of the movant, failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.' " Id. at *3  quoting Foman v. Davis, 371 U.S. 178, 182 (1962). Here, Cummings has already been afforded leave to amend, but to no avail. His amended complaint

remains fundamentally flawed on multiple scores which cannot be cured through more artful pleading. Therefore, this motion to dismiss should be granted with prejudice.

## III.  Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss, (Doc. 40), be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of September 2023.

S/Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge